JS 44 (Rev. 08/18)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Shawn Ravert

## DEFENDANTS
Monroe County; Primecare Medical, Inc.; Grace Ramos, LPN; Kenneth Wloczewski, D.O.; Paulina Foley, Pa-C, and John Does 1-10, et al

**(b)** County of Residence of First Listed Plaintiff: **Monroe County**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: **Monroe County**
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
David J. Caputo, Esquire/Zachary Arbitman, Esquire
Youman & Caputo, LLC
3803 West Chester Pike, Suite 150
Newtown Square, PA 19073

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | | | | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application ☐ 465 Other Immigration Actions | | |
| | ☐ 448 Education | ☐ 550 Civil Rights ☐ 555 Prison Condition ☐ 560 Civil Detainee - Conditions of Confinement | | | |

Brief description: Civil Rights

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 1983 and 28 U.S.C. §§ 1331, 1343(a)(3), 1343(a)(4) and 1367(a).

Civil Rights

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE: 6/1/20
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**
RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| SHAWN RAVERT, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | |
| vs. | : | |
| | : | |
| MONROE COUNTY; PRIMECARE MEDICAL, INC.; GRACE RAMOS, LPN; KENNETH WLOCZEWSKI, D.O.; PAULINA FOLEY, PA-C, and JOHN DOES 1-10, | : : : : : : | |
| | : | |
| Defendants. | : | |

**COMPLAINT**

I.   **INTRODUCTION**

1. This is a civil rights action brought under 42 U.S.C. § 1983 concerning Defendants' deliberate indifference to the serious medical needs of Plaintiff Shawn Ravert.

2. In providing medical care to Mr. Ravert at Monroe County Correctional Facility, Defendants failed to recognize the onset of a malignant melanoma on Mr. Ravert's right shin in December 2016. Among other things, Defendants intentionally discarded a suspicious lesion removed from Mr. Ravert's right shin in December 2016 rather than preserve or send it for pathologic analysis; they failed to re-check or monitor what they recklessly determined without any testing was a benign skin tag; and they failed to refer Mr. Ravert to the appropriate specialist.

3. As a result of their deliberate indifference to Mr. Ravert's serious medical need, Mr. Ravert's cancer was not diagnosed until June 2018. In December 2016, Mr. Ravert had

totally curable pre-cancer or Stage 1 disease at worst.  However, the 18-month delay in diagnosis allowed it to progress to pathologic Stage IIIC, which carries a melanoma-specific prognosis of 5-year 69% survival, 10-year 60% survival.

4. For these reasons, Plaintiff brings this civil rights action pursuant to 42 U.S.C. § 1983 and Pennsylvania law against Monroe County, PrimeCare (the contractor providing medical services to inmates at Monroe County Correctional Facility), and various individual medical professionals.  Plaintiff seeks substantial damages and all available remedies under federal and state law for the harm suffered by Plaintiff.

## II.   THE PARTIES

5. **Plaintiff Shawn Ravert** is an adult individual and a resident of the Commonwealth of Pennsylvania.

6. **Defendant Monroe County** is political subdivision of the Commonwealth of Pennsylvania, which manages and oversees the Monroe County Correctional Facility ("MCCF"), 4250 Manor Drive, Stroudsburg, PA 18360.

7. **Defendant PrimeCare Medical, Inc.** ("PrimeCare"), which has a principal place of business at 3940 Locust Lane, Harrisburg, PA 17109, was, at all relevant times, the holder of a contract to provide all medical services to inmates at MCCF.

8. At all relevant times, **Defendant Kenneth Wloczewski, D.O.,** was an osteopathic physician employed by Defendant PrimeCare and assigned to work at MCCF.

9. At all relevant times, **Defendant Paulina Foley, PA-C,** was a certified physician's assistant employed by Defendant PrimeCare and assigned to work at MCCF.

10. At all relevant times, **Defendant Grace Ramos, LPN,** was a licensed practical nurse employed by Defendant PrimeCare and assigned to work at MCCF.

11. At all relevant times, **Defendant John Does 1-10** were employees and/or agents of Defendant Monroe County and/or Defendant PrimeCare at Monroe County Correctional Facility. Plaintiff will seek leave to amend the Complaint as to name any appropriate defendant whose identity is presently unknown to Plaintiff but whose name becomes known during discovery.

12. At all relevant times, all Defendants acted under color of state law.

13. At all relevant times, all Defendants acted in concert and conspiracy and were jointly and severally liable and responsible for the harms to Shawn Ravert.

14. At all times relevant times, Defendants Wloczewski, Foley, and Ramos were acting as agents, servants, and/or employees of Defendant PrimeCare, and were acting within the scope and course of their employment, and under the direct control and supervision of Defendant PrimeCare.

15. At all times relevant hereto, Defendants MCCF and PrimeCare acted individually and/or through their duly authorized actual, apparent, and/or ostensible agents, servants and/or employees who were acting within the course and scope of their employment, service and/or agency, including Dr. Wloczewski, Ms. Foley and Ms. Ramos, and any other individuals who were involved in the conduct at issue in this case, as alleged below. The aforementioned agents, other than those identified by name in this Complaint, are appropriately described herein but their names are known to Defendants and not to Plaintiffs.

16. All Defendants herein are vicariously liable to Plaintiff for injuries sustained as a result of the conduct of persons or entities whose conduct was under their control, or right to control, and which conduct directly and proximately caused Plaintiff's injuries.

**III.    SUBJECT MATTER JURISDICTION AND VENUE**

17. The Court has subject matter jurisdiction over this case pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331, 1343(a)(3), 1343(a)(4) and 1367(a).

18. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

**IV.    FACTS**

19. Mr. Ravert was incarcerated at MCCF on or around October 16, 2016 following an arrest.

20. On December 14, 2016, Mr. Ravert presented to MCCF's medical department with a suspicious lesion on his right shin that started bleeding while playing basketball that day. Medical staff provided wound care and, after the bleeding subsided, discharged Mr. Ravert without further examination, describing the lesion the records as a "skin tag."

21. On December 26, 2016, Mr. Ravert presented to MCCF's medical department for further treatment for the lesion after attempting to remove it himself with a string. Medical staff provided wound care and scheduled a sick call with a doctor.

22. On December 27, 2016, Mr. Ravert presented to Defendant Dr. Wloczewski for evaluation of the lesion. Dr. Wloczewski examined Mr. Ravert's leg, noted that he had the lesion for over a year, started him on antibiotics, and scheduled removal of the lesion for the following week.

23. On December 28, 2016, Mr. Ravert presented to MCCF's medical department for follow up relating to his right shin lesion. The nurse noted that it was still intact, but appeared to be detaching from the leg. It was also noted that Mr. Ravert had tied strings around the lesion, in an attempt to strangulate it, and that the nurse provided wound care to Mr. Ravert.

24. A nurse saw Mr. Ravert again on the morning of December 29, 2016 and recorded the same observations as on the day prior. She provided wound care before discharging Mr. Ravert.

25. Later that night, at 9:43pm on December 29, Mr. Ravert presented to the medical department again after the lesion had fallen off, causing his right leg to bleed. Defendant Nurse Ramos saw Mr. Ravert and provided wound care. Nurse Ramos also conferred with the on-call provider for instruction on how to preserve the lesion specimen for lab analysis. Nurse Ramos advised that there was no specimen preservative in the office and, thereafter, the provider directed her to simply discard the specimen, which Ms. Ramos did.

26. On January 3, 2017, Mr. Ravert followed up with Dr. Wloczewski. Dr. Wloczewski noted only that what he described as the "skin tag" had fallen off and was gone.

27. Nearly one year later, on December 12, 2017, Mr. Ravert presented to MCCF's medical department after a basketball hit his right leg lesion and caused it to bleed. Medical staff again noted Mr. Ravert's polypoid lesion, provided wound care, and discharged Mr. Ravert without further examination, restriction, or referral to the on-call provider or another specialist.

28. On June 7, 2018, Mr. Ravert presented to Defendant Physician Assistant Foley to address reddening and irritation of the skin on his right leg. Physician Assistant Foley noted that Mr. Ravert developed the rash over the last week, that it was in the shape of a bullseye, and that a quarter-sized fleshly nodule was in the center of that bullseye. Physician Assistant Foley then performed a punch biopsy to remove a portion of the nodule for laboratory analysis.

29. On June 15, 2018, Physician Assistant Foley informed Mr. Ravert of his diagnosis of invasive malignant melanoma.

30. On June 18, 2018, Mr. Ravert saw dermatologist Alan Westheim, MD, who examined Mr. Ravert and confirmed his diagnosis of malignant melanoma of skin of right leg (HCC) and also diagnosed him with urticaria and prescribed antihistamines to treat same.

31. On September 6, 2018, Mr. Ravert saw oncologist Mathew Miceli, MD, who evaluated Mr. Ravert and referred him to surgical oncology at Hershey Medical Center for a wide resection of the melanoma with a sentinel lymph node biopsy.

32. On September 14, 2018, Mr. Ravert saw dermatologist Quy Pham, MD, at Hershey Medical Center. Dr. Pham noted that the melanoma had grown and occasionally bled and referred Mr. Ravert to skin oncology for treatment and staging.

33. On September 27, 2018, Mr. Ravert saw surgical oncologist Colette R Pameijer, MD, at Hershey Medical Center. Dr. Pameijer performed another biopsy of Mr. Ravert's right leg lesion. For treatment, Dr. Pamejier recommended the Mr. Ravert undergo a wide local excision with a 2 cm margin and sentinel node biopsy. Dr. Pamejier also advised that the location of the wound would prevent her from closing it and that Mr. Ravert should undergo delayed skin grafting after dressing the wound for a few weeks. According to the records, Dr. Pamejier also explained to Mr. Ravert that there was a 30% chance that the cancer had spread to his sentinel lymph node.

34. On or around October 15, 2018, a repeat biopsy was done at Hershey Medical Center and it showed T3b melanoma. A PET scan performed on November 21, 2018 showed intense FDG avidity in the Mr. Ravert's right leg lesion, moderate intensity in retropharyngeal (RP) lymph nodes, and low FDG avidity in spleen.

35. On or around December 5, 2018, Mr. Ravert visited with hematologist/oncologist Vineela Kasireddy, MD, at Fox Chase Cancer Center in Philadelphia to discuss treatment

options. Dr. Kasireddy referred Mr. Ravert to surgical oncologist Jeffrey Farma, MD, at Fox Chase for wide excision of the right leg melanoma.

36. On January 25, 2019, Dr. Farma performed a radical resection of a right pretibial melanoma with 2 cm margins, injection of Lymphazurin, intraoperative lymphatic mapping, and a sentinel lymph node biopsy of the right groin. These procedures were performed in conjunction with a skin graft performed by Neal Topham, MD, of Fox Chase Cancer Center.

37. The surgical pathology report from Mr. Ravert's January 25 procedure described the excised mass as a 13mm tumor with a pT4b Stage Classification.

38. On February 25, 2019, Mr. Ravert's cancer was staged as pathologic Stage IIIC (pT4b, pN c, cM0), which carries a melanoma specific prognosis of 5-year 69% survival, 10-year 60% survival.

39. Mr. Ravert has since undergone further treatment for his cancer, including immunotherapy by T-VEC injection, and remains under continued testing and surveillance for the recurrence and/or spread of his melanoma.

40. Notwithstanding their knowledge of Mr. Ravert's serious medical needs, Defendants, with deliberate indifference and in violation of relevant standards of care, failed to take actions to address Ms. Ravert's needs generally and specifically in the following:

    a. Failing to preserve the lesion removed from Mr. Ravert's right shin in December 2016;

    b. Failing to send a lesion specimen for pathologic analysis after it was removed in December 2016;

    c. Failing to perform a biopsy of the lesion in December 2016;

    d. Failing to recommend a biopsy of the lesion in December 2016;

e. Directing that the lesion specimen be discarded after it was removed in December 2016;

f. Failing to recognize in December 2016 and January 2017 based on Mr. Ravert's clinical history and presentation including the lesion's clinical appearance that the lesion was highly suspicious and required further evaluation;

g. Failing to recognize in December 2016 and January 2017 based on its clinical appearance that the lesion required pathologic evaluation;

h. Failing to recognize in December 2016 and January 2017 based on the lesion's clinical appearance that Mr. Ravert required evaluation by a dermatologist;

i. Failing to recognize in December 2016 and January 2017 based on the relevant history and Mr. Ravert's clinical presentation that Mr. Ravert required evaluation by a dermatologist;

j. Failing to order or recommend further evaluation of Mr. Ravert in December 2016 and January 2017 after the lesion specimen was discarded;

k. Failing to appreciate Mr. Ravert's risk for melanoma;

l. Failing to examine the area around the lesion for reoccurrence at any time prior to June 2018;

m. Failing to recognize Mr. Ravert's lesion as suspicious for melanoma and/or other cancer at any time prior to June 2018;

  n. Failing to refer Mr. Ravert to a dermatologist at any time prior to June 2018;

  o. Failing to refer Mr. Ravert to an oncologist at any time prior to June 2018;

  p. Causing an 18-month delay in the diagnosis of Mr. Ravert's malignant melanoma;

  q. Worsening Mr. Ravert's overall prognosis;

  r. Increasing the chance for recurrent malignancy;

  s. Increasing the chance of additional metastasis;

  t. Permitting Mr. Ravert's primary tumor to increase in size and stage.

41. As a direct result of the conduct of all Defendants, jointly and severally, Mr. Ravert has suffered and/or will continue to suffer:

  a. Extensive surgery including excision of original melanoma site and excision of lymph nodes;

  b. Requirement for immunotherapy and/or other treatments;

  c. Development of side effects from his immunotherapy;

  d. Increased risk of metastases and future metastases;

  e. Increased risk for distant spread of his melanoma;

  f. Increased risk of recurrence;

  g. A worse prognosis;

  h. Pain and suffering;

  i. Embarrassment;

  j. Humiliation;

  k. Disfigurement;

      l.      Loss of life's pleasures;

      m.      Loss of future earning capacity;

      n.      Past medical expenses;

      o.      Future medical expenses;

      p.      Reduction of life expectancy;

      q.      Increased risk of death; and,

      r.      Other injuries and damages not yet known, some or all of which may be permanent.

42. At all times relevant to this Complaint, the conduct of all Defendants—including, but not limited to, disposing of a highly suspicious appearing lesion removed from Mr. Ravert in December 2016—was in willful, reckless, and callous disregard of Mr. Ravert's rights under federal and state law.

## V.    CLAIMS FOR RELIEF

### COUNT I
### Plaintiff v. Defendants Wloczewski, Foley, and Ramos
### <u>Federal Constitutional Claims</u>

43. The preceding paragraphs are incorporated by reference as though fully set forth herein.

44. Defendants Wloczewski, Foley, and Ramos were deliberately indifferent to Mr. Ravert's serious medical needs and thereby violated Mr. Ravert's right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution and/or his right to due process of law under the Fourteenth Amendment to the United States Constitution.

## COUNT II
### Plaintiff v. Defendant Monroe County and PrimeCare
### Federal Constitutional Claims

45. The preceding paragraphs are incorporated by reference as though fully set forth herein.

46. The violations of Mr. Ravert's constitutional rights under the Eighth and /or Fourteenth Amendments to the United States Constitution, Plaintiff's damages, and the conduct of the individual defendants were directly and proximately caused by the actions and/or inactions of Defendants Monroe County and PrimeCare, which have, with deliberate indifference, failed to establish policies, practices, and procedures and/or have failed to properly train, supervise and discipline their employees regarding the provision of adequate medical care to prisoners with serious medical needs.

## COUNT III
### Plaintiff v. Defendants Wloczewski, Foley, Ramos, and PrimeCare
### State Law Negligence Claims

47. The preceding paragraphs are incorporated by reference as though fully set forth herein.

48. Defendants Wloczewski, Foley, and Ramos had a duty to comply with generally accepted medical standards of care in their treatment of Mr. Ravert.

49. Defendants Wloczewski, Foley, and Ramos violated their duty of care.

50. Defendants' violation of their duty of care to Mr. Ravert was a direct and proximate cause and a substantial factor in bringing about Mr. Ravert's damages as outlined above, and, as a result, Defendants are liable to Plaintiff.

51. Because the individual Defendants were acting as agents, servants, and/or employees of Defendant PrimeCare, and because the individual Defendants were acting within

the scope and course of their employment, and under the direct control and supervision of Defendant PrimeCare, Defendant PrimeCare is liable to Plaintiff on the basis of *respondeat superior* liability.

### VI. REQUESTED RELIEF

52. The preceding paragraphs are incorporated by reference as though fully set forth herein.

53. Plaintiff demands a jury trial.

WHEREFORE, Plaintiff respectfully requests:

a. Compensatory damages as to all Defendants;

b. Punitive damages as to Defendants PrimeCare, Wloczewski, Foley, and Ramos;

c. Reasonable attorneys' fees and costs; and

d. Such other equitable relief as the Court deems appropriate and just.

Respectfully submitted,

**YOUMAN & CAPUTO, LLC**

Dated: June 1, 2020        BY: _____
DAVID J. CAPUTO, ESQUIRE
ZACHARY ARBITMAN, ESQUIRE
1635 Market Street, 16th Floor
Philadelphia, PA 19103
(215) 302-1999
dcaputo@youmancaputo.com
zarbitman@youmancaputo.com

*Attorneys for the Plaintiff*