UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHAWN RAVERT,<br>      Plaintiff | )<br>)<br>) | CIVIL ACTION NO. 4:20-CV-0889 |
| v. | )<br>)<br>) | (ARBUCKLE, M.J.) |
| MONROE COUNTY, *et al.,*<br>      Defendants | )<br>)<br>)<br>) | |

<u>MEMORANDUM OPINION</u>
*Defendant Monroe County's Motion to Dismiss (Doc. 18)*

## I.    INTRODUCTION

Shawn Ravert ("Plaintiff") was, at one time, an inmate detained in the Monroe County Correctional Facility ("MCCF"). He alleges that three members of the medical staff at this facility failed to make a timely diagnosis of his malignant melanoma. Plaintiff has sued the County, the private corporation contracted by the County to provide medical care at the county facility, and three members of the medical staff (employed by the private corporation).

The County has filed a Motion to Dismiss (Doc. 18). For the reasons explained herein, that Motion to Dismiss (Doc. 18) is DENIED.

## II.    BACKGROUND & PROCEDURAL HISTORY

Beginning in October 2016, Plaintiff was incarcerated at MCCF. (Doc. 1, ¶19).

On December 14, 2016, a lesion or "skin tag" on Plaintiff's right shin started bleeding while Plaintiff was playing basketball. (Doc. 1 ¶ 20). Plaintiff sought medical care at MCCF's medical department. *Id.* Unidentified members of the medical staff provided wound care and discharged Plaintiff without further examination. *Id.*

On December 26, 2016, Plaintiff attempted to remove the lesion by himself, using a piece of string. (Doc. 1 ¶ 21). Following this attempt, Plaintiff sought medical care at MCCF's medical department. *Id.*

On December 27, 2016, Defendant Kenneth Wloczewski examined the lesion on Plaintiff's leg. (Doc. 1, ¶ 22). During that examination, Defendant Wloczewski noted that the lesion had been present for one year and that removal was scheduled for the following week. *Id.*

On December 28, 2016, Plaintiff was examined at the MCCF Medical Department for follow-up. (Doc. 1 ¶ 23). During the examination, the lesion was "still intact" but appeared to be detaching from Plaintiff's leg due to Plaintiff's attempt to remove it. *Id.* An unidentified nurse provided wound care. *Id.*

On December 29, 2016, Plaintiff was examined by an unidentified nurse at the MCCF Medical Department. (Doc. 1, ¶ 24). During the examination, the lesion was "still intact" but appeared to be detaching from Plaintiff's leg due to Plaintiff's attempt to remove it. *Id.* The nurse provided wound care. *Id.*

Later the same evening, however, the lesion fell off. (Doc. 1 ¶ 25). When it did, Plaintiff was examined by Defendant Grace Ramos, a nurse at the MCCF Medical Department. *Id.* Defendant Ramos provided wound care to stop the bleeding. *Id.* She also conferred with an unidentified "on-call provider" by telephone to ask about preservation of the lesion that "fell off." *Id.* There was no preservative in the office. *Id.* Defendant Ramos was instructed to discard the lesion. *Id*.

On January 3, 2017, Defendant Wloczewski examined Plaintiff. (Doc. 1, ¶ 26). Defendant Wloczewski noted that the "skin tag" had fallen off and was gone. (Doc. 1, ¶ 26).

Eleven months later, on December 12, 2017, Plaintiff's right leg began to bleed in the same area while playing basketball. (Doc. 1, ¶ 27). He was examined by the staff at the MCCF Medical Department. *Id.* During the examination, medical staff observed the presence of a polypoid lesion, provided wound care, and discharged Plaintiff without further examination, restriction, or referral to the on-call provider or another specialist. (Doc. 1, ¶ 27).

Six months later, on June 7, 2018, Plaintiff was examined by Defendant Paulina Foley (a physician's assistant) with complaints of redness and irritation of the skin on his right leg. (Doc. 1, ¶ 28). Defendant Foley noted a rash in the shape of a bullseye with a quarter-sized fleshly nodule in the center, and performed a punch biopsy to remove a portion of the nodule for analysis. *Id.*

On June 15, 2018, eighteen months after the skin tag was brought to the attention of the MCCF staff and seventeen months after the skin tag fell off, Plaintiff was diagnosed with invasive malignant melanoma. (Doc. 1, ¶ 29).

On June 18, 2018, Dr. Akan Westheim, confirmed the diagnosis of malignant melanoma. (Doc. 1, ¶ 30).

On September 6, 2018, Oncologist Mathew Miceli examined Plaintiff. (Doc. 1, ¶ 31). Dr. Miceli referred Plaintiff to surgical oncology for a wide resection of the melanoma, with a sentinel lymph node biopsy. *Id*.

On September 14, 2018, Dermatologist Quy Pham examined Plaintiff. (Doc. 1, ¶ 32). Dr. Pham noted that the melanoma had grown and occasionally bled. *Id.* Plaintiff was referred to skin oncology for treatment and staging. *Id.*

On September 27, 2018, Oncologist Colette R. Pameijer took a second biopsy of the lesion. (Doc. 1 ¶ 33). Dr. Pameijer recommended Plaintiff undergo a wide local excision and sentinel node biopsy. *Id.* Dr. Pameijer anticipated that Plaintiff would need to undergo a skin graft a few weeks after the excision and estimated that there was a 30% chance the cancer had spread to Plaintiff's sentinel lymph node. *Id*.

On October 15, 2018, Plaintiff had a third biopsy at Hershey Medical Center. (Doc. 1 ¶ 34). The biopsy showed T3b melanoma. *Id*. On November 21, 2018, a positron emission tomography ("PET") scan showed intense fluorodeoxyglucose ("FDG") activity (indicative of possible cancer) in Plaintiff's right leg lesion,

moderately intense FDG activity in retropharyngeal lymph nodes, and low FDG avidity in his spleen. *Id*.

On December 5, 2018, hematologist/oncologist Dr. Vineela Kasireddy examined Plaintiff and referred to surgical oncologist Jeffrey Farma for wide excision of the right leg melanoma. (Doc. 1, ¶ 35).

On January 25, 2019, six months after his first cancer diagnosis, Plaintiff had the following surgical procedures: a radical resection of a right pretibial melanoma; intraoperative lymphatic mapping; a sentinel lymph node biopsy of the right groin; and a skin graft. (Doc. 1, ¶ 36). Dr. Farma did the resection, mapping, and biopsy. *Id*. Dr. Neal Topham did the skin graft. *Id*. The surgical pathology report from this procedure described the excised mass as a 13 mm tumor with a pT4b Stage Classification. (Doc. 1, ¶ 37).

On February 25, 2019, Plaintiff was diagnosed with Stage IIIC melanoma. (Doc. 1, ¶ 38). Plaintiff alleges that this diagnosis has a 69% survival rate at five years. *Id*.

On June 2, 2020, Plaintiff filed a Complaint, against the following Defendants:

(1)  Monroe County (Where Plaintiff was incarcerated);

(2)  PrimeCare Medical, Inc. (the company that staffed the Monroe County Jail's medical department);

  (3) Kenneth Wloczewski, D. O. (a physician employed by PrimeCare, Inc. who examined Plaintiff at the Jail);

  (4) Paulina Foley, PA-C (a physician's assistant employed by PrimeCare Inc. who examined Plaintiff at the Jail); and

  (5) Grace Ramos, LPN (an LPN employed by PrimeCare Inc., who examined Plaintiff at the Jail).

(Doc. 1).[1]

Plaintiff alleges the following legal claims:

  Count I: Eighth and Fourteenth Amendment denial of medical care against Defendants Wloczewski, Foley and Ramos.

  Count II: *Monell* / Supervisory Liability Claims against Defendants Monroe County and PrimeCare.

  Count III: Negligence / Medical Malpractice claim against Defendants Wloczewski, Foley, Ramos, and PrimeCare.

As relief, Plaintiff requests compensatory damages, punitive damages (against only the PrimeCare Defendants), reasonable attorneys' fees and costs, and such other equitable relief as the Court deems appropriate and just. (Doc. 1, ¶ 53).

On July 9, 2020, Defendant Monroe County filed a Motion to Dismiss. (Doc. 18). Along with their Motion, Defendant Monroe County filed a Brief in Support. (Doc. 19). On August 17, 2020, Plaintiff filed a Brief in Opposition. (Doc. 31). On August 27, 2020, Defendant Monroe County filed a Reply. (Doc. 33).

---

[1] Plaintiff also names 10 John Doe Defendants.

III.    LEGAL STANDARD

A motion to dismiss tests the legal sufficiency of a complaint. It is proper for the court to dismiss a complaint in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure only if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss, the court "must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010). In reviewing a motion to dismiss, a court must "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

Following the rule announced in *Ashcroft v. Iqbal*, "a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, a complaint must recite factual allegations enough to raise the plaintiff's claimed right to relief beyond the level of mere speculation. *Id.* To determine the sufficiency of a complaint under the pleading regime established by the Supreme Court, the court must engage in a three-step analysis:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because

they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 675, 679). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief" and instead must 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

IV. ANALYSIS

Defendant Monroe County is named only in Count 2 of Plaintiff's Complaint. In Count 2 of his Complaint, Plaintiff alleges:

> The violations of Mr. Ravert's constitutional rights under the Eighth and/or Fourteenth Amendments to the United States Constitution, Plaintiff's damages, and the conduct of the individual defendants were directly and proximately caused by the actions and/or inactions of Defendants Monroe County and PrimeCare, which have, with deliberate indifference, failed to establish policies, practices, and procedures and/or have failed to properly train, supervise and discipline their employees regarding the provision of adequate medical care to prisoners with serious medical needs.

(Doc. 1, ¶ 46).

In support of this legal claim, Plaintiff alleges that Defendant Monroe County is a political subdivision of the Commonwealth of Pennsylvania which manages and oversees MCCF. (Doc. 1, ¶ 6). Plaintiff also alleges that, as part of its responsibility to manage MCCF, Defendant Monroe County contracted with Defendant PrimeCare

they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 675, 679). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief" and instead must 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

IV. ANALYSIS

Defendant Monroe County is named only in Count 2 of Plaintiff's Complaint. In Count 2 of his Complaint, Plaintiff alleges:

> The violations of Mr. Ravert's constitutional rights under the Eighth and/or Fourteenth Amendments to the United States Constitution, Plaintiff's damages, and the conduct of the individual defendants were directly and proximately caused by the actions and/or inactions of Defendants Monroe County and PrimeCare, which have, with deliberate indifference, failed to establish policies, practices, and procedures and/or have failed to properly train, supervise and discipline their employees regarding the provision of adequate medical care to prisoners with serious medical needs.

(Doc. 1, ¶ 46).

In support of this legal claim, Plaintiff alleges that Defendant Monroe County is a political subdivision of the Commonwealth of Pennsylvania which manages and oversees MCCF. (Doc. 1, ¶ 6). Plaintiff also alleges that, as part of its responsibility to manage MCCF, Defendant Monroe County contracted with Defendant PrimeCare

Medical to provide medical services at Monroe County Correctional Facility. (Doc. 1, ¶ 4).

Defendant Monroe County does not dispute for the purposes of this Motion that Plaintiff has alleged enough facts to show that it is a municipality. As a municipality, Defendant Monroe County is a "person" for § 1983 purposes only in limited circumstances under *Monell v. Dep't of Social Servs.* 436 U.S. 658, 690 (1978). To bring a § 1983 claim against a municipality, Plaintiff "must show that they were deprived of 'rights, privileges or immunities secured by the Constitution and laws,' and that the deprivation of those rights was the result of an official government policy or custom." *Mulholland v. Gov't Cty. of Berks*, 706 F.3d 277, 238 (3d Cir. 2013). For municipal liability to attach, Plaintiff must establish that the municipal policy or custom was itself unconstitutional or was the "moving force" behind the constitutional deprivation. *Thomas v. Cumberland County*, 749 F.3d 217, 222 (3d Cir. 2014) (citation omitted).

A. WHETHER PLAINTIFF'S GENERAL ALLEGATIONS THAT MONROE COUNTY FAILED TO ESTABLISH "POLICIES, PRACTICES, AND PROCEDURES AND/OR HAVE FAILED TO PROPERLY TRAIN, SUPERVISE AND DISCIPLINE THEIR EMPLOYEES REGARDING THE PROVISION OF ADEQUATE MEDICAL CARE" ARE ENOUGH TO SUPPORT A PLAUSIBLE *MONELL* CLAIM AT THE MOTION TO DISMISS STAGE

As discussed above, to state a claim against Defendant Monroe County, Plaintiff must allege that the violation of his rights was caused either by a Monroe County policy or custom. *Monell*, 436 U.S. at 694; *Berg v. County of Allegheny,* 219 F.3d 261, 275 (3d Cir. 2000). Municipal policies include the decisions of a government's lawmakers and the acts of its policymaking officials as well as municipal customs, which are acts or practices that, even though not formally approved by an appropriate decision maker, are so persistent and widespread as to have the force of law. *Id..*; *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003). In other words, a municipality "'can be held responsible as an entity when the injury inflicted is permitted under its adopted policy or custom.'" *Mulholland v. Gov't County of Berks*, 706 F.3d 227, 237 (3d Cir. 2013) (quoting *Beck v. City of Pittsburgh,* 89 F.3d 966, 971 (3d Cir. 1996)).

A policy or custom can be shown in any of four ways:

(1) the existence of a formal policy, officially promulgated or adopted by a municipality; *Monell*, 436 U.S. at 690; or (2) that an official or officials responsible for establishing final policy with respect to the subject matter in question took action or made a deliberate, specific decision that caused the alleged violation of plaintiff's constitutional rights, *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84 (1986) (citation omitted); or (3) the existence of an unlawful practice by

> subordinate officials so permanent and well settled as to constitute "custom or usage" and proof that this practice was so manifest or widespread as to imply the constructive acquiescence of policymaking officials, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127-30 (1989); or (4) if liability is based on a claim of failure to train or supervise, that "the failure to train amounts to deliberate indifference to the rights of persons with whom . . . [municipal employees] came into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

*Nye v. Cumberland Cty.*, No. 1:14-CV-713, 2016 WL 695109, at *4 (M.D. Pa. Feb. 19, 2016).

In its Brief in Support, Defendant Monroe County contends that Plaintiff did not plead enough underlying facts to support the existence of any "policy or procedure" by Monroe County, and therefore has not pleaded a plausible *Monell* claim. Specifically, Defendant Monroe County argues:

> In the present matter, it is clear that PrimeCare had policies and procedures in place to insure that inmates received medical care. Plaintiff received extensive care for his alleged medical condition. There are no facts articulated by Plaintiff which reveal any policy or procedure by Monroe County which prevented or inhibited PrimeCare's ability to render medical care consistent with the judgment of PrimeCare's personnel. Simply stated, there is no policy or procedure of Monroe County which caused any constitutional violation.

(Doc. 19, p. 14).

In response, Plaintiff argues that he need not be subjected to any "heightened pleading standard." He asserts that that his allegation that Defendants Monroe County and PrimeCare's "policies, practices, and procedures and/or have failed to properly train, supervise and discipline their employees regarding the provision of

adequate medical care to prisoners with serious medical needs," is enough to proceed past the motion to dismiss stage. In support of his position, Plaintiff relies on several other District Court cases allowing *Monell* claims for deliberate indifference to medical needs brought by inmates, like Plaintiff, to proceed past the motion to dismiss stage without identifying a specific policy or custom. For example, in *Ramos-Vazquez v. PrimeCare Medical, Inc.*, a case involving an inmate who was denied antipsychotic medication during incarceration, the Court found that Plaintiff had sufficiently pleaded a *Monell* claim against both PrimeCare and Berks County without identifying a specific policy, noting that:

> The allegations are "conclusory" in the sense that it is reasonable for Plaintiff to conclude that the actions he complains of were undertaken pursuant to some policy, procedure or custom of at least one of the entities that controlled and implemented medical treatment at the prison. At this stage, Plaintiff cannot be expected to specify or articulate which policy, procedure or custom resulted in these actions; nor should he be expected to know which entity formulated each policy. Therefore, the Court holds that Plaintiff's allegations are sufficient to state a claim against the Court and against PrimeCare.

No. 09-364, 2010 WL 3855546 at *9 (E.D. Pa. Sept. 30, 2010).

Like in *Ramos-Vazquez*, I find that Plaintiff has pleaded enough facts to lead to a reasonable inference that, as the operator and overseer of MCCF, Defendant Monroe County may have had a policy governing the medical treatment provided in that facility, or may be responsible for Defendant PrimeCare's policy governing the medical treatment provided in that facility. *See e.g., Ponzini v. Monroe Cty*, No.

3:11-CV-00413, 2015 WL 5123720, at *3 (M.D. Pa. Aug. 31, 2015). Furthermore, there is enough in the Complaint to lead to a reasonable inference that the acts complained of were undertaken pursuant to a policy, procedure, or custom. Accordingly, like in *Ramos-Vazquez*, I conclude that, under these circumstances, Plaintiff's allegations are sufficient to state a *Monell* claim against Defendant Monroe County.

      B.    WHETHER PLAINTIFF HAS PLEADED A PLAUSIBLE CONSTITUTIONAL VIOLATION TO SUPPORT HIS MONELL CLAIM AGAINST DEFENDANT MONROE COUNTY

Next, Defendant Monroe County alleges that Plaintiff's *Monell* claim against it should be dismissed because Plaintiff has not alleged any underlying constitutional violation caused by Defendant Monroe County's policies, practices, and procedures and/or the failure to properly train, supervise and discipline their employees. Specifically, Defendant Monroe County argues:

> Finally, *Monell* liability cannot lie where there is no underlying constitutional violation. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *see also Stephens v. City of Englewood*, 689 Fed. Appx. 710, 713 (3d Cir. 2017) (affirming district court's dismissal of *Monell* claims against the police department and city where Plaintiffs failed to establish an underlying constitutional violation against the individual defendant-detectives); *Johnson v. City of Phila.*, 837 F.3d 343, 354 (3d Cir. 2016) (*citing Grazier ex rel. White v. City of Phila.*, 328 F.3d 120, 124 (3d Cir. 2003) (holding that a *Monell* claim is not cognizable absent an underlying constitutional violation). Therefore, it is respectfully requested that Monroe County's Motion to Dismiss be granted and that it be dismissed with prejudice.

(Doc. 19, pp. 14-15).

In response, Plaintiff argues that the Complaint includes sufficient factual allegations to support his *Monell* claim on a "policy or practice" theory.

In reply, Defendant Monroe County argues:

The real gravamen of Plaintiff's case is that a quicker diagnosis should have been made by the PrimeCare Defendants. At most, Plaintiff is able to demonstrate negligence in failing to more timely diagnose his condition. However, a mere delay in treatment or even a misdiagnosis does not equate to deliberate indifference. Moreover, Monroe County nor its employees had any role in diagnosing Plaintiff's medical condition. Simply stated, Plaintiff has alleged no facts that any Monroe County staff did anything wrong, much less acted with deliberate indifference. Since Plaintiff cannot demonstrate a violation of [h]is constitutional rights by any Monroe County official, Plaintiff cannot demonstrate a cause of action against Monroe County. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *see also Stephens v. City of Englewood*, 689 Fed. Appx. 710, 713 (3d Cir. 2017) (affirming district court's dismissal of *Monell* claims against the police department and city where Plaintiffs failed to establish an underlying constitutional violation against the individual defendant-detective); *Johnson v. City of Phila.*, 837 F.3d 343, 354 (3d Cir. 2016) (*citing Grazier ex rel. White v. City of Phila.*, 328 F.3d 120, 124 (3d Cir. 2003) (holding that a *Monell* claim is not cognizable absent an underlying constitutional violation). Therefore, it is respectfully requested that this Honorable Court grant Monroe County's Motion to Dismiss and that Monroe County be dismissed with prejudice from this lawsuit.

Plaintiff argues it is premature to dismiss Monroe County, because he has not had an opportunity to conduct discovery into Monroe County policies and procedures which may be constitutionally deficient. However, this is what is already known (in addition to no underlying constitutional violation), Monroe County has a contract with PrimeCare to provide medical treatment to inmates incarcerated in the Monroe County Correctional Facility. It is clear that PrimeCare had policies and procedures in place to insure that inmates received medical care in Montgomery County Correctional Facility and treatment outside of Montgomery County Correctional Facility. Plaintiff may take issue with the treatment decisions of the medical providers who provided him

care; however, those treatment decisions were in no way related to Monroe County policies or procedures. Therefore, it is respectfully requested that this Honorable Court grant Monroe County's Motion to Dismiss and that Monroe County be dismissed from this lawsuit with prejudice.

(Doc. 33, pp. 4-7).

In a simultaneously filed Opinion, addressing a Motion to Dismiss filed by the medical Defendants (PrimeCare Medical, Wloczewski, Foley, and Ramos) I found that Plaintiff pleaded a cognizable constitutional claim against the individual medical Defendants. Plaintiff has also alleged a *Monell* claim against Defendant PrimeCare Medical, which has not been dismissed.

Furthermore, to the extent Defendant Monroe County suggests that it cannot be held liable under *Monell* for the actions of medical staff employed by a private company under contract with the County, I disagree. In 2015, in a similar case, Monroe County argued that it could not be held liable under *Monell* where an inmate's medical care is turned over to trained healthcare providers employed by a private company that contracted with the County to provide that care. *Ponzini*, 2015 WL 5123720. When ruling on a motion for summary judgment, the Court found:

> Monroe County has a constitutional obligation to "provide food, clothing, shelter and medical treatment to inmates." *White v. Napoleon*, 897 F.2d 103, 113 (3d Cir. 1990). At the time of Barbaro's death and incarceration, it is undisputed that Monroe County had chosen to fulfil its medical treatment obligation to the inmate population of MCCF by contracting with a third-party medical provider. Its duty, however,

> is not absolved by contracting with an entity such as [PrimeCare Medical, Inc.]. Although [PrimeCare] has contracted to perform an obligation owed by the county, the county itself remains liable for any constitutional deprivations caused by the policies or customs of [PrimeCare]. In that sense, the county's duty is non-delegable.
>
> *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 705 (11th Cir. 1985). In this case, PrimeCare Medical, Inc. has potential liability with respect to Barbaros's death, (see Memorandum Opinion, Doc. 175); such liability concerns the appropriateness of its policies for handling medical issues and medication requirements of newly incarcerated detainees, as well as its alleged failure to train and supervise its staff in the execution of these policies. It follows, then, that Monroe County also has potential liability stemming from its own, independent obligation to police its medical services contract with PrimeCare Medical, Inc.

*Id.* at *10-11 (alterations in original) (internal footnote omitted); *see also Whitehurst v. Lackawanna Cty.*, No. 3:17-CV-00903, 2020 WL 6106616 (M.D. Pa. Mar. 5, 2020) report and recommendation adopted by 2020 WL 6083409 (M.D. Pa. Oct. 15, 2020).

Like *Ponzini*, Plaintiff in this case alleges that medical staff employed by Defendant PrimeCare violated Plaintiff's constitutional right to adequate medical care. Like *Ponzini*, Plaintiff alleges that Defendant Monroe County contracts with Defendant PrimeCare to fulfil its obligation to provide medical treatment to inmates at MCCF. Like *Ponzini*, the private company (Defendant PrimeCare) has potential liability because there is a pending claim against it. As noted above, Plaintiff has alleged a *Monell* claim against Defendant PrimeCare Medical, which has not been

dismissed, and has alleged plausible constitutional claims against the medical defendants employed by Defendant PrimeCare. Thus, at this stage, Plaintiff has pleaded a plausible legal and factual basis for his *Monell* claim against Defendant Monroe County.

V.    CONCLUSION

Accordingly, based on the foregoing:

1. Defendants' Motion to Dismiss (Doc. 18) is DENIED.

2. An appropriate Order will issue.

Date: March 17, 2021                                       BY THE COURT

                                                           *s/William I. Arbuckle*
                                                           William I. Arbuckle
                                                           U.S. Magistrate Judge